IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| A.W., | ) | Case No. 8:19-cv-342 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT, JURY DEMAND AND** |
| | ) | **DESIGNATION OF PLACE OF TRIAL** |
| NEBRASKA MEDICAL CENTER, a | ) | |
| Nebraska non-profit corporation; and | ) | |
| MARK DIETRICH, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

A.W., Plaintiff in the above-captioned matter, by and through her counsel of record, for her cause of action against Defendants, states as follows:

1.

A.W. is a resident of Palm Beach, Florida. Her identity is known to Defendant Nebraska Medical Center, which communicated with A.W. about DIETRICH eleven months after DIETRICH performed surgery on her and, in the course thereof, committed battery on her. The nature of the battery is the reason that A.W. is identified here by her initials.

2.

The Nebraska Medical Center ("NMC") is a Nebraska non-profit domestic corporation with its principal place of business in Omaha, Douglas County, Nebraska. At all times herein mentioned, DIETRICH was a licensed physician in the State of Nebraska who held himself out to be duly licensed as such and to have the skills, ability, expertise, and learning of similar medical practitioners. He practices medicine in Omaha, Douglas County, Nebraska, and holds privileges at NMC.

3.

There is complete diversity between Plaintiff and Defendants, and the matter in controversy

greatly exceeds, exclusive of interest and costs, the sums specified by 28 U.S.C. §1332. The events at issue took place in Omaha, Douglas County, Nebraska. Venue and jurisdiction are proper in this Court.

## DR. DIETRICH AND NMC

4.

DIETRICH is an alumnus of the University of Nebraska Medical Center. In 2017, the University of Nebraska Medical Center described DIETRICH as follows:

> Mark E. Dietrich is an assistant professor in the Department of Orthopaedic Surgery and Rehabilitation. He received his law degree from the University of Nebraska College of Law in 1994, and his medical degree from the University of Nebraska College of Medicine in 2001. Dr. Dietrich completed a five-year residency program at the University of Nebraska/Creighton University Health Foundation in 2006, followed by an orthopaedic sports medicine fellowship at Minnesota Sports Medicine in Minneapolis in 2007. He is a board-certified orthopaedic surgeon. He is a member of the American Academy of Orthopaedic Surgeons, American Orthopaedic Society for Sports Medicine, Nebraska Orthopaedic Society, Nebraska Medical Association and Nebraska State Bar Association.[1]

DIETRICH was an event physician for the United States Olympic Team Trials in Omaha, a sideline physician for area youth sports teams, and a member of UNMC's "Physicians Leadership Academy" and Surgical Services Operations Committee. He was a generous financial donor to the Department of Orthopedic Surgery, qualifying for the "$10,000 and Up" listing of financial supporters.

5.

On information and belief, DIETRICH was also a sexual predator, and NMC knew it.

6.

In what is believed to be early 2017, the Omaha Police Department began investigating

---

[1] "Framework for Growth: 2016 Report of the UNMC Department of Orthopaedic Surgery and Rehabilitation" at 84.

DIETRICH for sexually groping and fondling patients who were under anesthesia.  On May 30, 2017, DIETRICH was sued for fondling the breasts and vaginal tissues of an orthopedic patient on December 9, 2016 while that patient was anesthetized.[2]

7.

NMC was aware of the allegations against DIETRICH.  NMC did not suspend DIETRICH's privileges.  NMC did not restrict DIETRICH from performing surgery or otherwise having access to anesthetized patients.

8.

In spite of its knowledge of the serious allegations that DIETRICH was groping the breasts and vaginal tissues of anesthetized patients (including NMC patients), NMC maintained DIETRICH's access to patients who were anesthetized, helpless and totally unable to protect themselves – patients who had placed their complete trust in NMC to keep them safe during surgery.

### A.W. BECOMES A PATIENT OF NMC AND DIETRICH

9.

A.W. sustained an injury to her knee in July 2017.  As a resident of Florida, she received treatment in Florida.  The treatment she received in Florida did not resolve the pain and limitation caused by her knee injury.

10.

In her search for different medical care, A.W. received a referral to NMC and to DIETRICH.  A.W. traveled to Omaha to be examined by DIETRICH on November 15, 2017.

11.

---

[2] *Deborah Lowndes, and spouse Timothy Lowndes v. Mark E. Dietrich, M.D.*, Douglas County District Court Case No. 17-4506.

DIETRICH made a good impression on A.W. and A.W.'s mother, who was present during the consultation. DIETRICH told A.W. he could help her. DIETRICH presented as not only knowledgeable and experienced, but also caring and trustworthy. A.W. felt comfortable with DIETRICH, and agreed with DIETRICH's recommendation for anterior cruciate ligament reconstruction with a bone patellar tendon bone autograft.

12.

DIETRICH and NMC scheduled A.W.'s surgery for December 1, 2017.

13.

By December 1, 2017, NMC was well aware of the allegations that DIETRICH was touching the sexual and private parts of anesthetized patients for purposes of personal gratification, not for medical treatment. NMC did not include this information in the informed consent discussions with its patients, or otherwise warn patients that the surgeon it had privileged to perform surgery on them was the subject of multiple investigations for sexual assault. Had A.W. known, she would not have consented to giving DIETRICH access to her anesthetized body.

14.

On information and belief, NMC was by December 1, 2017 assigning surgical staff to surreptitiously observe DIETRICH during surgery and report whether DIETRICH did anything inappropriate to the anesthetized patient. This, apparently, was NMC's means of managing the risk that one of its privileged surgical staff may be preying on anesthetized patients in NMC operating rooms.

15.

On December 1, 2017, DIETRICH performed an arthroscopy-knee with anterior cruciate ligament repair on A.W. Ryan Miller, H4, assisted, as did MS4 Seth Wardyn. On information and

belief, nursing staff was present as well. General anesthesia for A.W. began at 1224 and finished at 1507. NMC discharged A.W. at 1904.

16.

No one advised A.W. that DIETRICH had, apparently, removed a glove and fondled her vagina during the procedure. Nor did any participant in the procedure record this in A.W.'s chart. To read A.W.'s chart, this procedure was absolutely unremarkable.

17.

On December 11, 2017, A.W. returned to DIETRICH for follow-up evaluation. She returned to DIETRICH for another follow-up evaluation on February 2, 2018. She remained unaware that DIETRICH had fondled her vagina with his ungloved hand during the December 1, 2017 procedure. She returned to Florida.

18.

Eleven months after A.W.'s procedure, on October 19, 2018, NMC terminated DIETRICH's employment and privileges.

19.

That same month (October 2018), two representatives of NMC telephoned A.W. A.W. had no reason to expect a call from NMC and did not know why anyone from NMC would be calling her.

20.

The NMC representatives informed A.W. that someone present in the operating room during A.W.'s December 1, 2017 procedure had reported that DIETRICH had touched A.W.'s vagina with his ungloved hand while A.W. was anesthetized.

21.

The person who witnessed DIETRICH assault A.W. did not intervene. Nor did the person

who witnessed DIETRICH assault A.W. make any notation in A.W.'s chart. If that person reported what he or she saw before A.W.'s follow-up appointments with DIETRICH, no one advised A.W. before she attended either of the two follow-up appointments.

22.

NMC's representatives told A.W. that NMC would pay for three sessions of mental health counseling. A.W. found a counselor, attended counseling, and then called NMC to inform it that three sessions would not be enough. She remains shocked, confused, betrayed and mortified, and her emotional distress can reasonably be expected to persist long into the future.

23.

The end result is that DIETRICH, by treating A.W.'s anesthetized body as a vehicle for personal gratification and thrill-seeking, forever changed the story of A.W.'s life. She will, forevermore, be a person who was sexually abused while under anesthesia. There are not two ways around that. She will, forevermore, be someone whom a predator decided he wanted to prey on. She will, forevermore, be someone whom a predator believed he could get away with assaulting.

24.

And there are not two ways around the fact that NMC knew it had, at the least, a potential predator privileged to perform surgery, yet maintained his access to anesthetized patients. A.W. will always know that NMC assessed her to be not valuable enough to protect her from DIETRICH.

25.

Despite that these facts bore directly on events that occurred during her surgical procedure, NMC did not supplement A.W.'s medical chart to include its finding that DIETRICH had fondled A.W.'s vagina, or to include its telephone advisement to A.W. of its finding.

26.

On December 1, 2017, Defendants, and each of them, were responsible for obtaining examination of A.W., testing, screening, diagnosis, referral, recommending consultation, treatment and case management for A.W.'s physical condition and for A.W.'s health and well being, including her emotional well being. A.W. employed Defendants to care for and treat her and to do all things reasonably necessary for her care and treatment, to tell her what she needed to know in order to decide whether to let DIETRICH perform surgery on her, and to refrain from using her anesthetized body for personal gratification. Defendants undertook such employment and agreed to care for and treat A.W. and to do all things reasonably necessary in connection therewith.

27.

Before December 2, 2017, Defendant NMC knew that DIETRICH represented a threat to anesthetized NMC patients, yet continued his privileges and his association with NMC and, more to the point, allowed him continued access to anesthetized patients until October 19, 2018. This failure of supervisory responsibility directly and proximately caused DIETRICH's ability to meet A.W., develop her trust and cause the resulting harm alleged in this complaint.

28.

DIETRICH, too, directly and proximately caused harm to A.W. by committing battery on her while she was anesthetized and thereby permanently changing her life. He did so in the course and scope of his privileges and employment with NMC, triggering *respondeat superior* liability for NMC.

29.

Defendants, and each of them, failed to follow a reasonable standard of care in the medical treatment which they provided for A.W. during the period of time relevant herein. and failed to follow a reasonable standard of care in their treatment of A.W.. The direct and proximate result of

Defendants' coverup, DIETRICH's battery and Defendants' subsequent additional coverup was to permanently and irrevocably change A.W.'s life.

30.

A.W. waives her right to a review of this matter by the Nebraska Hospital-Medical Liability Panel pursuant to NEB. REV. STAT. § 44-2840(4). A copy of this Complaint will be served via certified mail, return receipt requested, on the Director of Insurance.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For compensatory damages (to include damage to A.W.'s emotional health) in an amount exceeding $75,000, in an amount to be specifically proven at trial;

2. For post-judgment interest at the maximum legal rate;

3. For costs of suit incurred herein;

4. For such other and further relief as the Court deems just and proper.

### JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

A.W. requests that this matter be tried to a jury in Omaha, Nebraska.

A.W., Plaintiff,

By: /s/ *Maren Lynn Chaloupka*
Maren Lynn Chaloupka – NSBA # 20864
Chaloupka Holyoke Snyder Chaloupka & Longoria, P.C., L.L.O.
1714 2nd Avenue
P.O. Box 2424
Scottsbluff, Nebraska 69363-2424
(308) 635-5000
mlc@chhsclaw.net