IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| A. W.,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>NEBRASKA MEDICAL CENTER, a Nebraska non-profit corporation; and M.D. MARK DIETRICH,<br><br>　　　　　　Defendants. | 8:19-CV-342<br><br>MEMORANDUM AND ORDER |

　　　　This case comes before the Court on defendant Mark Dietrich's Motion to Strike, Filing 37, and defendant Nebraska Medical Center's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Filing 40. Dietrich requests an order under Fed. R. Civ. P. 12(f) striking certain language from A.W.'s Second Amended Complaint on the basis it is redundant, immaterial, impertinent, and/or scandalous. Filing 38 at 1. Nebraska Medical Center ("NMC") seeks an order dismissing A.W.'s claims for vicarious liability for tortious conduct and fraudulent concealment. Filing 41 at 1-2. NMC does not move to dismiss A.W.'s claim for negligent supervision against it.

　　　　For the reasons stated herein, the Court denies Dietrich's Motion to Strike and grants NMC's Motion to Dismiss. Thus, A.W.'s remaining claims are for battery and fraudulent concealment against Dietrich and for negligent supervision against NMC.

I.　BACKGROUND

　　　　As was set forth in this Court's prior Memoranda and Orders, Filing 27 at 2-3; Filing 28 at 1-3, Plaintiff, A.W., brings claims against Defendants based on inappropriate sexual contact by Dietrich during a surgical procedure A.W. underwent at NMC's facility. NMC is a Nebraska non-profit domestic corporation that employed Mark Dietrich, a board-certified orthopedic surgeon and Nebraska-licensed physician holding privileges at NMC. Filing 31 at 1. Dietrich was additionally

1

an assistant professor at NMC's Department of Orthopedic Surgery and Rehabilitation. Filing 31 at 2. The operative complaint also quotes from an NMC document describing Dietrich's credentials at length:

> Mark E. Dietrich is an assistant professor in the Department of Orthopaedic Surgery and Rehabilitation. He received his law degree from the University of Nebraska College of Law in 1994, and his medical degree from the University of Nebraska College of Medicine in 2001. Dr. Dietrich completed a five-year residency program at the University of Nebraska/Creighton University Health Foundation in 2006, followed by an orthopaedic sports medicine fellowship at Minnesota Sports Medicine in Minneapolis in 2007. He is a board-certified orthopaedic surgeon. He is a member of the American Academy of Orthopaedic Surgeons, American Orthopaedic Society for Sports Medicine, Nebraska Orthopaedic Society, Nebraska Medical Association and Nebraska State Bar Association.

Filing 31 at 2.

In early 2017, the Omaha Police Department began investigating Dietrich for groping and fondling the breasts and vaginas of anesthetized patients. Filing 31 at 2-3. A.W. alleges NMC was aware of the allegations against Dietrich and "knew" Dietrich "was also a sexual predator." Filing 31 at 2. Despite this knowledge, NMC did not suspend Dietrich's privileges, restrict him from performing surgery, or prevent him from having access to anesthetized patients. Filing 31 at 3.

On November 15, 2017, A.W., a twenty-year-old female resident of Florida, traveled to Omaha and was examined by Dietrich in relation to a prior knee injury. Filing 31 at 4. Based on that initial consult, Dietrich recommended "anterior cruciate ligament reconstruction with a bone patellar tendon bone graft," and A.W. agreed and scheduled the surgery for December 1, 2017, at an NMC facility. Filing 31 at 4. Because NMC was aware of the allegations against Dietrich, NMC assigned surgical staff to observe Dietrich during A.W.'s surgery and report any inappropriate behavior. Filing 31 at 4.

On December 1, 2017, in an NMC operating room with NMC staff members, Dietrich performed knee surgery on A.W. while she was anesthetized. Filing 31 at 4-5. Someone present

during the surgery reported that, while A.W. was under anesthesia, Dietrich "removed a glove and fondled her vagina." Filing 31 at 5. He did so for "personal gratification and thrill-seeking." Filing 31 at 6. This was not recorded in A.W.'s chart, and NMC did not inform her of this incident until October 2018. Filing 31 at 5.

As a result of Dietrich and NMC's actions or omissions, A.W. felt shocked, betrayed, mortified, and emotionally distressed. Filing 31 at 6. A.W. filed suit against Dietrich and NMC on August 8, 2019. Filing 1. Before serving summonses, A.W. filed an Amended Complaint, adding a new damages allegation. Filing 6 at 8. After being served, both NMC and Dietrich filed Motions to Dismiss. Filing 15; Filing 17. As is relevant here, the Court dismissed A.W.'s claims for professional negligence, failure to obtain informed consent, and punitive damages against Dietrich and dismissed her claims against NMC for tortious conduct based on vicarious liability, failure to obtain informed consent, and punitive damages. Filing 27 at 10; Filing 28 at 10. The Court granted A.W. leave to amend her complaint with respect to all but the punitive damages claim. Filing 27 at 9-10; Filing 28 at 9.

A.W. filed her Second Amended Complaint on February 18, 2020. Filing 31. It included nearly identical factual allegations to her First Amended Complaint, *compare* Filing 6 at 1-6, *with* Filing 31 at 1-6. In contrast to the previous complaint, the Second Amended Complaint enumerated specific causes of action: battery against Dietrich, negligent supervision and vicarious liability against NMC, and fraudulent concealment against both defendants. Filing 31 at 8-11. With respect to A.W.'s claim regarding NMC's vicarious liability, she added new allegations specifying that Dietrich had privileges as a member of NMC's medical staff, Dietrich "targeted A.W. as a patient in NMC's facility, [Dietrich] gained access to A.W. within NMC's facility," and NMC benefited financially from having Dietrich in its employ. Filing 31 at 8.

3

Dietrich filed a Motion to Strike pursuant to Fed. R. Civ. P. 12(f). Filing 37. He seeks to strike terminology from the Second Amended Complaint describing him as a "sexual predator" who engaged in "groping," "fondling," "preying," or "sexual assault" for "personal gratification" as redundant, immaterial, impertinent, and/or scandalous. Filing 38 at 3-4. NMC filed a Motion to Dismiss A.W.'s claims based on informed consent and fraudulent concealment against it, arguing both fail to state a claim. Filing 40; Filing 41 at 4-12.

## II.  DISCUSSION

### A.  Standards of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Ashcroft*, 556 U.S. at 678).

Federal Rule of Civil Procedure 12(f) permits a Court to strike certain material from a pleading. Fed. R. Civ. P. 12(f). "Because the rule is stated in the permissive . . . it has always been

4

understood that the district court enjoys 'liberal discretion' thereunder." *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Thor Corp. v. Automatic Washer Co.*, 91 F. Supp. 829, 832 (D.C. Iowa 1950)).

### B. Motion to Strike

Dietrich seeks to strike language from A.W.'s Complaint on the basis that it is irrelevant and inflammatory. Filing 37. In particular, Dietrich takes issue with A.W.'s description his of actions, claiming her use of phrases like "sexual predator," "groping," "fondling," "preying," and "touching the sexual and private parts of anesthetized patients for purposes of personal gratification" should be stricken because they "explicit[ly] employ language contained in the Nebraska criminal statutes realting ot [sic] sexual assault." Filing 38 at 3. Dietrich argues "[t]hese terms will cause the trier of fact to draw unwarranted inferences at trial and create confusion of the issues with any potential jury pool, eliciting a criminal connotation in a tort claim where the sole remedy is compensatory money damages." Filing 38 at 4. He also takes issue with A.W. quoting from NMC's biographic description of him, claiming this "lengthy narrative is immaterial." Filing 38 at 5.

Rule 12(f) permits the Court to strike certain material from a pleading as follows:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (1) on its own; or
>
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).

"Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citing *Nationwide Ins. Co. v. Cent. Mo.*

5

*Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001)). "Striking a party's pleading, however, is an extreme and disfavored measure." *Id.* (citing *Stanbury Law Firm*, 221 F.3d at 1063).

The Court fails to see how any of the complained-of material meets the high bar set forth by Fed. R. Civ. P. 12(f). Dietrich takes issue with the description of his alleged actions, claiming they employ criminal terminology and will inflame the fact-finder. However, the Second Amended Complaint does not employ unnecessarily graphic descriptions, does not use salacious language, and does not expressly accuse Dietrich of committing a crime. Rather it sets forth allegations which are essential to A.W.'s causes of action. While those allegations may overlap with or share similarities with criminal charges not at issue in this civil case, this does not mean they must be stricken. Furthermore, A.W.'s description of Dietrich's qualifications is relevant to her decision to have him perform surgery on her and is not exaggerated in length or scandalous; in fact, it is a direct quote from NMC's own publication.

It is not the Court's role to police the terminology and language a plaintiff uses in her complaint simply because the defendant disagrees with how his alleged conduct is described. If Dietrich takes issue with the merits of A.W.'s allegations against him, that is an issue for the fact-finder to decide based on the evidence presented at trial, not for the Court to decide at this early stage of the case. Dietrich's Motion to Strike is denied.

### C. Motion to Dismiss

NMC seeks to dismiss two counts of A.W.'s Complaint: vicarious liability based on battery and fraudulent concealment. Filing 41. NMC does not seek dismissal of A.W.'s claim of negligent supervision against it. The Court agrees that the Second Amended Complaint fails to state valid causes of action for either vicarious liability or fraudulent concealment.

*1. Vicarious Liability*

NMC first seeks to dismiss A.W.'s claim against it predicated upon vicarious liability for Dietrich's tortious conduct. Filing 41 at 4-8. NMC argues the Second Amended Complaint fails to state a claim for vicarious liability because Dietrich's conduct was outside the course and scope of his employment. Filing 41 at 7-8. The Court agrees.

The Court previously set forth at length the law governing vicarious liability in its previous Memorandum and Order regarding NMC's first Motion to Dismiss this claim. Filing 28 at 5-6. "Under the doctrine of respondeat superior, an employer may be held vicariously liable for the negligence or intentional torts of its employee, provided the employee was acting within the scope of the employer's business." *Pearce v. Werner Enters., Inc.*, 116 F. Supp. 3d 948, 953 (D. Neb. 2015) (citing *Reeder v. State*, 254 Neb. 707, 578 N.W.2d 435, 439 (1998); *Strong v. K & K Invs., Inc.*, 216 Neb. 370, 343 N.W.2d 912, 914–16 (1984)). In determining whether conduct falls within an employee's scope of employment, the Nebraska Supreme Court uses the test enumerated in the Restatement (Second) of Agency (1958). *Id.* (citing *Johnson v. Evers*, 195 Neb. 426, 430, 238 N.W.2d 474, 476 (1976)). "Conduct of an employee is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master." *Johnson*, 195 Neb. at 430, 238 N.W.2d at 476 (quoting Restatement (Second) of Agency § 228 at 504 (1958)).

The Court previously dismissed A.W.'s vicarious-liability claim against NMC because it determined there was no allegation Dietrich was acting within the scope of his employment when he allegedly fondled A.W.'s vagina. The Court pointed to Nebraska precedent holding "that acts of sexual assault or harassment . . . do not fall within the scope of the tortfeasor's employment." *Pearce*, 116 F. Supp. 3d at 953 (collecting cases).

7

A.W. amended her Complaint to include allegations that Dietrich's conduct took place in NMC's facility, that Dietrich had privileges as a member of NMC's medical staff, that Dietrich "targeted A.W. as a patient in NMC's facility [and] gained access to A.W. within NMC's facility," and that NMC benefited financially from having Dietrich in its employ. Filing 31 at 8. However, even with these additions, A.W.'s Second Amended Complaint suffers from the same shortcoming as her previous vicarious-liability claim: there is no allegation that Dietrich's act of inappropriate sexual touching was within the scope of his employment.

A.W.'s new allegations relate to Dietrich's work as a doctor performing surgery, but do not claim that the alleged fondling was somehow within the scope of his work. As before, A.W. has adequately pled NMC employed Dietrich at the time he allegedly fondled A.W.'s vagina with an ungloved hand, but she has not plead that this was the conduct he was employed by NMC to perform. Nor could Dietrich's alleged behavior have been actuated by any purpose that would serve NMC; in fact, Dietrich would know that engaging in unwanted sexual contact with a patient would be more likely to harm NMC reputationally and financially than to serve NMC in any way.

A.W. again points to extra-jurisdictional cases to support her position. Filing 42 at 3. These cases range from doctors stealing patients' medication to inappropriate relationships involving priests and Boy Scout leaders, and they apply law from Ohio to Connecticut. Filing 42 at 3-11. In short, these cases are both factually and legally inapposite. Based on established Nebraska law, A.W. has failed to allege Dietrich's behavior was within the scope of his employment. The vicarious-liability claim against NMC predicated upon Dietrich's alleged tortious conduct must be dismissed.

   *2. Fraudulent Concealment*

NMC next seeks to dismiss A.W.'s claim against it for fraudulent concealment because it fails to state a claim. Filing 41 at 8-10. A.W. alleges that NMC's failure to inform her of the prior accusations of unwanted sexual contact against Dietrich constituted a fraudulent concealment which proximately caused her harm. Filing 31 at 9-10. The Court finds the Second Amended Complaint fails to state a valid cause of action.

The Nebraska Supreme Court has concisely set forth the elements of a cause of action for fraudulent concealment:

> [T]o prove fraudulent concealment, a plaintiff must prove these elements: (1) The defendant had a duty to disclose a material fact; (2) the defendant, with knowledge of the material fact, concealed the fact; (3) the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment; (4) the defendant concealed the fact with the intention that the plaintiff act or refrain from acting in response to the concealment or suppression; (5) the plaintiff, reasonably relying on the fact or facts as the plaintiff believed them to be as the result of the concealment, acted or withheld action; and (6) the plaintiff was damaged by the plaintiff's action or inaction in response to the concealment.

*Knights of Columbus Council 3152 v. KFS BD, Inc.*, 280 Neb. 904, 927, 791 N.W.2d 317, 334 (2010) (emphasis removed).

With regard to Plaintiff's allegations of fraudulent concealment, A.W. adequately pleads that had she known of Dietrich's history, she would not have undergone surgery with him. Filing 31 at 9-10. She also adequately alleges NMC concealed Dietrich's history from her, generated revenue by having her as a patient, and "deceived and misled her." Filing 31 at 10. Further, A.W.'s complaint sufficiently states that NMC's concealment of Dietrich's history was the proximate cause of her damages. Filing 31 at 10.

However, A.W.'s claim against NMC fails on the first required element: duty. Absent from A.W.'s allegations is the claim that NMC had any duty to disclose to her the previous complaints

9

against Dietrich. Nebraska law provides that "[i]n fraudulent concealment cases, existence of a duty to disclose is a question of law, [while] the breach of that duty is a question of fact for the jury." *Streeks, Inc. v. Diamond Hill Farms, Inc.*, 258 Neb. 581, 594, 605 N.W.2d 110, 121 (2000), *overruled on other grounds by Knights of Columbus Council*, 280 Neb. 904, 791 N.W.2d 317. Without a legal duty to disclose a fact, a party cannot be liable under a theory of fraudulent concealment. *See* Restatement (Second) of Torts § 551 (1977) ("One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, *if, but only if, he is under a duty to the other* to exercise reasonable care to disclose the matter in question." (Emphasis added.)).

The parties have not provided nor has the Court located any cases in which courts applying Nebraska law have found a hospital to have a legal duty to disclose allegations of sexual misconduct against a doctor performing surgery at its facility to a potential patient. *See* Filing 41 at 11-12; Filing 42 at 12-15. In fact, imposing such a duty would be contrary to established Nebraska law which places the onus of obtaining a patient's informed consent to a medical procedure solely upon the doctor, not upon the doctor's employer or the hospital in which the surgery is performed. *See Bank v. Mickels*, 302 Neb. 1009, 1019-20, 926 N.W.2d 97, 105 (2019), ("[I]formed consent concerns *a doctor's* duty to inform his or her patient of the risks involved in treatment or surgery." (emphasis added)); *Curran v. Buser*, 271 Neb. 332, 340, 711 N.W.2d 562, 570 (2006) ("Under [Neb. Rev. Stat.] §§ 44–2816 and 44–2820, consent is informed when a doctor advises a patient of the risks in the same manner as doctors in similar localities and under similar circumstances ordinarily would."); *Giese v. Stice*, 252 Neb. 913, 922, 567 N.W.2d 156, 164 (1997) (rejecting the contention "that a hospital has a duty to obtain informed consent merely because [the

hospital] meets the statutory definition of 'health care provider' as that term is used in [Neb. Rev. Stat.] § 44-2816").

The Court previously rejected A.W.'s claim against NMC alleging failure to obtain informed consent. Her attempt to recast that claim as fraudulent concealment is unpersuasive based on established Nebraska law. Accordingly, NMC's Motion to Dismiss the fraudulent concealment claim is granted.

### D. Dismissal with Prejudice

The Court concludes that A.W. has failed to state claims for vicarious liability based on tortious conduct and fraudulent concealment. In her brief, A.W. seeks leave to amend her Second Amended Complaint. Filing 42 at 16-17. She proposes adding allegations that NMC markets itself as a stellar facility, that it persuaded A.W. to leave her home state of Florida to undergo the surgery, and that NMC marketed Dietrich to patients. Filing 42 at 16. NMC asks that dismissal of her claims be granted with prejudice. Filing 41 at 11-12; Filing 45 at 10.

The Federal Rules of Civil Procedure provide that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a). "But parties do not have an absolute right to amend their pleadings, even under this liberal standard." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (citing *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005)). "[P]ermission to amend may be withheld if the plaintiff does not have at least colorable grounds for relief." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 616 (8th Cir. 2003). Thus, "[a] district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party,

11

or futility of the amendment.'" *Id.* (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

This is Plaintiff's third complaint and her second unsuccessful attempt to cure pleading deficiencies relating to NMC's vicarious liability and its failure to provide her with information about Dietrich's past. As set forth above, A.W.'s allegations in this regard are legally rather than merely factually deficient. Further, attempted amendment would be futile given that Nebraska courts have failed to recognize the causes of action A.W. seeks to assert. Thus, A.W.'s "repeated failure to cure deficiencies by amendments previously allowed" as well as the fact future amendments could not cure the deficiencies based on established Nebraska law lead the Court to conclude that her second request for leave to amend should be denied. Her claims for vicarious liability and fraudulent concealment are dismissed with prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Dietrich's Motion to Strike is denied. The Court grants NMC's Motion to Dismiss with prejudice A.W.'s claims against it for vicarious liability and fraudulent concealment. A.W.'s surviving claims are battery and fraudulent concealment against Dietrich and negligent supervision against NMC.

IT IS THEREFORE ORDERED:

1. Mark Dietrich's Motion to Strike, Filing 37, is denied;
2. Nebraska Medical Center's Motion to Dismiss, Filing 40, is granted;
3. A.W.'s claims against Nebraska Medical Center for vicarious liability, tortious conduct and fraudulent concealment are dismissed with prejudice.

Dated this 5th day of May, 2020.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge

13